Document Number Case Number
036 05-CR-0155-C
United States District Court
Western District of Wisconsin
Theresa M. Owens

Filed/Received
02/06/2006 08:34:03 AM CST

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

Plaintiff,

v.

BERNARDO GARCIA,

Defendant.

REPORT AND RECOMMENDATION

05-CR-155-C

---

REPORT

The government has charged defendant Bernardo Garcia with being a felon with a gun and with unlawfully possessing methamphetamine precursor chemicals and paraphernalia. Before the court for report and recommendation is Garcia's motion to suppress all evidence derived from the government's placement of a tracking device on the exterior of his automobile. Garcia contends that this was an unreasonable warrantless seizure in violation of his Fourth Amendment rights. The government disagrees, arguing that the agent's placement of a tracking device on Garcia's car did not interfere with Garcia's property rights in a manner sufficient to violate the Fourth Amendment. This is an open question in most circuits, including the Seventh Circuit. Although there are a number of approaches the court could take, I am recommending that:

(1) Before the government may install a locational monitor on the exterior of a person's motor vehicle it must establish *at least* a reasonable suspicion that the car's owner(s)/driver(s) are engaged in criminal activity, and that knowledge of the car's

movement in public places will lead to the discovery of evidence relevant to the criminal investigation;[1]

(2) Because the government has not met this standard, the court should suppress the evidence against Garcia; but,

(3) Because this standard is new, the court might wish to allow the government an opportunity to meet its burden at this time at a de novo evidentiary hearing, pursuant to 28 U.S.C. § 636(b)(1).

## FACTS

Neither side saw the need for an evidentiary hearing, so the factual record is limited. These are the undisputed facts that I can discern fairly from the documents in the record:

In May 2005, Wisconsin DOJ/DCI agents were investigating Garcia as a suspected methamphetamine cooker in Polk County.[2] Agents knew that Garcia used a silver Ford Tempo. At about 10:50 p.m. on May 26, 2005, a DCI agent covertly installed a "GPS Memory Tracking Unit" on the exterior of the Tempo (under the rear bumper) while it was parked on a public street. The agent did not obtain a search warrant or a court order before

---

[1] As will be come clearer below, the reasonable suspicion standard is limited to the installation and monitoring of a transmitter in a public place. Probable cause should be the threshold to allow the government to monitor transmitters inside homes and the court order should be in place before monitoring begins, but these are not concerns in the instant case.

[2] The government attached to its brief portions of a DCI report that refers to the general nature of the inculpatory information gathered by the agents but does not actually spell it out.

installing the tracking device. By means of satellite trilateration, this device created and stored geographic coordinates commemorating the car's movement.[3]

Sometime later, agents retrieved the device and reviewed its memory. They learned that someone had driven this car to a particular residence located on a large tract of land near Chetek. On July 29, 2005, agents visited the property and obtained from the owners consent to search their property for a meth lab (about which they were unaware). Agents found a camper in a wooded area surrounded by items used to cook methamphetamine, such as anhydrous ammonia and peeled lithium batteries. Agents obtained and executed a state search warrant for the camper, whence they seized a shotgun. Shortly after agents searched the camper, Garcia drove onto the property. Agents stopped his car and searched it, seizing lithium batteries, pseudoephedrine pills and shotgun shells.

State agents referred Garcia to the U.S. Attorney and on October 26, 2005, the grand jury charged Garcia as a felon with a gun and with crimes related to methamphetamine cooking.

ANALYSIS

Garcia seeks to suppress all of the evidence against him that was discovered as a result of the agents using a tracking device; this would be everything relevant to the federal

---

[3] Although neither side made a record of this, GPS recording devices are publicly available and are used routinely by people such as wilderness trekkers to record their travels. *See, e.g.*, http://en.wikipedia. org/wiki/GPS. I suspect that DCI has its own high-octane device designed more specifically for police use.

indictment. Garcia concedes that he cannot challenge the fact that the agents tracked his car while it was on public streets. *See, e.g., United States v. Knotts*, 460 U.S. 276 (1983). Garcia limits his challenge to the question left open in *Knotts*: the reasonableness of the warrantless *installation* of a tracking device on his vehicle. 460 U.S. at 279 at "*".

The government does not contest that Garcia had a property interest in the Tempo on which agents placed a tracking device, nor does it challenge his claim of but-for causation between the agents' use of the device and their discovery of the contraband charged against Garcia. The government contends that the law is clear (at least in some circuits) that law enforcement agents may install tracking devices on suspects' cars as they see fit, that is with no showing of reasonable suspicion, probable cause, and without a judicial warrant or order. Actually, the law is not as clear as the government represents.

The issue presented by Garcia has intrigued the Supreme Court for over a quarter century, but it has yet to decide the issue. In 1978, Justice Rehnquist noted that "the question is an important and recurring one;" *Miroyan v. United States*, 439 U.S. 1338, 1342-43 (1978); in *Michael v. United States*, 454 U.S. 950 (1981), the Court denied a petition for certiorari to answer this very question; Justices White, Brennan and Powell dissented from the denial, noting there was a split in the circuits as to whether the warrantless installation of a tracking device was legal if supported by reasonable suspicion, or if instead agents needed a court order supported by probable cause. Although this is dicta by two justices,

note that in framing the issue, they presume that the government needs *at least* reasonable suspicion to justify installing a tracking device.

In the case for which certiorari had been sought and denied, *United States v. Michael*, 645 F.2d 252 (5th Cir. 1981), a fractured *en banc* Fifth Circuit had endorsed this lower threshold, holding that a law enforcement agent's reasonable suspicion that the target was engaged in criminal activity justified placing a monitoring device on the suspect's car and monitoring. *Id.* at 257. The court explained:

> The actual installation of the beeper was much less intrusive than the typical stop and frisk. Michaels was in the pizza restaurant when the installation took place. He was not detained or questioned; he suffered no indignity; nothing from the interior of the van was seized or searched; indeed, nothing even from the van's exterior was removed.

*Id*. at 258.

The court then employed a balancing test:

> In balancing the public concerns served by the use of the beeper, to discovery Michaels' drug manufacturing apparatus against the slight infringement of Michaels' expectation of privacy, we find the beeper's use to be eminently reasonable. We hold that the installation and monitoring of the beeper involved no violation of Michael's Fourth Amendment rights.

*Id*. at 259.

Eight judges of the 24 empaneled vigorously dissented:

> A majority of our court has decided that an individual living under our Constitution has no reasonable expectation of privacy such as would protect him from a trespass upon his property by governmental agents, a trespass that enables them to maintain continuous electronic surveillance over his movements 24 hours per day continuously and indefinitely. The same act, if committed by a private person, would subject that person to criminal and civil liability. The majority . . . has determined that executive agents of the government may, without legislative or judicial authorization, ignore an individual's proprietary or possessory interest in his own property under circumstances self-determined by the executive agent as affording them the reasonable suspicion that their trespass might lead them to information of law violation.
>
> [T]his holding that governmental agents may invade or use the private person's property by a trespass in violation of statute is truly subversive of our Constitution's protection of private property rights against intrusion or taking by executive agents except as authorized by valid legislation. It is, of course . . . violative of the great principles incorporated in our Bill of Rights that every individual living under our Constitution is protected against arbitrary intrusion by government upon the privacy of his person or the sanctity of his property.

645 F.2d at 260 (Tate, Kravitch, Frank Johnson, Politz, Hatchett Randall, Thomas Clark & Jerre Williams, dissenting).[4]

---

[4] At the other end of the spectrum, seven of the sixteen judges in the majority concurred in the result but did not believe that putting a transmitter on the exterior of a car even constituted a seizure.

Notwithstanding this impassioned rhetoric, the Supreme Court soon knocked the props out from under a big piece of the dissent's argument in *United States v. Knotts,* 460 U.S. 276, holding that the Fourth Amendment provided no protection from the government using electronic devices surreptitiously to monitor citizen movement in public places. In *Knotts*, the DEA learned from a chemical company that a former employee was obtaining large quantities of chemicals used to cook methamphetamine. With permission from the chemical seller, the DEA placed a locational transmitter in the 5-gallon can of ether sold to defendant, who passed it to others. The DEA tracked the chloroform can to a cabin which the DEA surveilled for three days before obtaining and executing a search warrant, which revealed a meth lab.

The defendants moved to suppress the evidence on the ground that tracking them by means of a beeper was unconstitutional. (They did not challenge the installation of the beeper because they believed they lacked standing). The Court held that the defendants had no reasonably expectation of privacy as they traveled in an automobile on public thoroughfares, and the use of a beeper to augment what police otherwise could have seen on their own did not change this analysis. *Id.* at 281-83.

Three justices concurred in the judgment, but proclaimed that it would have been a much thornier case if the defendants had challenged the *installation* of the beeper. *Id.* at 285-87 (Brennan & Marshall, JJ., concurring; Steven, Brennan & Marshall, JJ., concurring).

---

645 F.2d at 259 (John Brown, Charles Clark, Gee, Tjoflat, Hill, Henderson & Healy, specially concurring).

Within a year the Supreme Court fine-tuned *Knotts* in *United States v. Karo*, 468, U.S. 705 (1984), holding that it *did* violate the Fourth Amendment for the government to monitor a warrantless tracking device while it was inside a person's private residence. Again, the defendants did not challenge the actual installation of the beeper; therefore, the actual holding of *Karo* is not directly on point to the instant case. Conversely, to the extent that subsequent courts have cited *Karo* for the proposition that the court approved the warrantless installation of beepers into private property, *see, e.g., United States v. McIver*, 186 F.3d 1119, 1127 (9th Cir. 1999) they have misread the actual holding of the case. *See* 468 U.S. at 12-13.

Offering some policy advice in *dicta*, the Court noted that it would be much better practice for law enforcement agents to obtain judicial approval before using any tracking device:

> Despite this holding, warrants for the installation and monitoring of a beeper will obviously be desirable since it may be useful, even critical, to monitor the beeper to determine that it is actually located in a place not open to visual surveillance. As will be evidence below, such monitoring without a warrant may violate the Fourth Amendment."

*Id.* at 713 n. 3. Indeed, the Court was unsympathetic to the government's claim that it *never* needed a warrant to monitor a beeper:

> The Government's contention that warrantless beeper searches should be deemed reasonable is based upon its deprecation of the benefits and

> exaggeration of the difficulties associated with procurement of a warrant. The Government argues that the traditional justifications for the warrant requirement are inapplicable in beeper cases, but to a large extent that argument is based upon the contention, rejected above, that the beeper constitutes only a minuscule intrusion on protected privacy interests. The primary reason for the warrant requirement is to interpose a neutral and detached magistrate between the citizen and the officer engaged in the often competitive enterprise of ferreting out crime . . .. Requiring a warrant will have the salutary effect of ensuring that the use of beepers is not abused, by imposing upon agents the requirement that they demonstrate in advance their justification for the desired search.

*Id.* at 717. As something of a corollary, the Court declined to decide whether reasonable suspicion would be sufficient to justify use of a beeper. *Id.* at 718, n.5. Again, note that the argument is framed in terms of probable cause versus reasonable suspicion; the Court doesn't even consider the possibility that something less than reasonable suspicion would justify the surreptitious installation of a tracking device on a suspect's motor vehicle.

Arguably more helpful to Garcia's claim in the instant case are these opinions offered, gratuitously in a concurring and dissenting opinion by Justices Stevens, Brennan and Marshall:

> The surreptitious use of a radio transmitter–whether it contains a microphone or merely a signaling device–on an individual's personal property is both a seizure and a search within the meaning of the fourth Amendment.

*Id*. at 728.

> The attachment of the beeper, in my judgment, constituted a "seizure." The owner of property, of course, has a right to exclude from it all the world, including the Government, and a concomitant right to use it exclusively for his own purposes. When the Government attaches an electronic monitoring device to that property, it infringes that exclusionary right; in a fundamental sense it has converted the property to its own use. Surely such an invasion is an"interference" with possessory rights; the right to exclude . . .. That interference is also "meaningful"; the character of the property is profoundly different when infected with an electronic bug than when it is entirely germ free.

*Id. at* 729.

> The impact of beeper surveillance upon interests protected by the Fourth Amendment leads me to what I regard as the perfectly sensible conclusion that absent exigent circumstances Government agents have a constitutional duty to obtain a warrant before they install an electronic device on a private citizen's property.

*Id*. at 736.

A survey of the law since *Karo* shows no clear support for Garcia's position, but it is not nearly as pro-law enforcement as the government contends in its brief. The most damaging case to Garcia is *United States v. McIver*, 186 F.3d 1119 in which the Ninth Circuit cited *Karo* for the proposition that no Fourth Amendment "seizure" took place when agents put a transmitter on the defendant's car. Although the court overstated the applicability of *Karo* to the facts, it clearly viewed defendant's claim as meritless sniveling, finding that "no

seizure occurred because the officers did not meaningfully interfere with McIver's possessory interest in the Toyota 4Runner." *Id.* at 1127. *McIver*, coupled with *Michaels*, above, do not bode well for Garcia.

But this is as bad as it gets for Garcia because the other cases cited by the government do not stand for the propositions for which the government has cited them. In *United States v. Bernard*, 625 F.2d 854 (9th Cir. 1980), the court held that the defendant's Fourth Amendment rights were not violated when DEA agents inserted a radio transmitter into a can of precursor chemicals that then were used to fill an order placed by defendants. *Id*. at 856, 860-61. The court did not have occasion to rule on whether agents would have been able to install a transmitting device on property already belonging to and in the defendant's possession.

Similarly, in *United States v. Louis*, 621 F.2d 1382 (5th Cir. 1980), police put a tracking device in a drum of precursor chemicals ordered by the defendants prior to the defendants taking possession of them. A critical fact in *Louis*, not mentioned by the government, was that the agents sought and obtained from the federal court an order authorizing the use of the electronic device before the defendants took possession of the chemicals. *Id*. at 1385. Indeed, the court mused in *dicta* that

> the installation of a beeper in goods physically possessed by the defendants might invade a Fourth Amendment privacy interest, even if the beeper were never activated. There arguably is a right to enjoy the use of goods without the

> possibility of uninvited monitoring that an unactivated beeper would create."

*Id*. at 1388.

In *United States v. Bruneau*, 594 F.2d 1190 (8th Cir. 1979), the FBI obtained a warrant from a federal court authorizing use of a locational transponder in the targeted airplane *and* sought prior permission from the owner/seller of the airplane before the defendant took possession of it. *Id*. at 1193.

So, in both *Louis* and *Bruneau*, there were court orders equivalent to warrants. I assume the government was not trying to mislead the court with its errant citations.

The case of *United States v. Moran*, 349 F. Supp. 2d, 425 N.D.N.Y. (2005) actually does hold that law enforcement agents may attach a GPS device to a suspect's car without obtaining court approval first. The court, however, based its conclusion solely on *United States v. Knotts*, 460 U.S. at 285. As noted above, *Knotts* explicitly avoided deciding the question whether *installation* of the tracking device violated the Fourth Amendment; Accordingly, the *Moran* decision does not advance the analysis.

Neither do the citations by Garcia and the government to 18 U.S.C. §3117, which empowers a court to authorize use of a tracking device outside the geographic jurisdiction of the court. Because § 3117 stands alone in the criminal code, at first blush it appears to be an orphan unsupported by kindred statutes addressing other aspects of tracking device placement and use. This has caused some litigants and courts to wonder what to make of the absence of additional statutes similar to the statutory authority required to install pen

registers, *see* 18 U.S.C. §3121-3127, and stored electronic communications, *see* 18 U.S.C. §2701-2712. But as noted in *United States v. Gbemisola*, 225 F.3d 753 (D. C. Cir. 2000), Congress enacted §3117 in 1986 for the purpose of filling a gap in F. R. Crim. P. 41. *Id*. at 241, n. 2. Then, in 1990, Rule 41 was amended to account for the situation addressed by §3117; accordingly, the statute essentially is obsolete.

To the extent §3117 is relevant at all to the instant analysis, it implies that Congress expected law enforcement and agents to obtain court warrants before installing tracking devices. The Senate, in its report, observed:

> This new code section provides that if a court is empowered to issue a warrant or other order for the installation of a mobile tracking device, and the tracking of the object or person on which the device is installed, such warrant remains valid even if the device is moved outside the jurisdiction of the court, even outside the jurisdiction of the United States, provided that the device was installed within the jurisdiction of the court, *in conformity with the court order*. This clarification does not effect [*sic*] current legal standards for *the issuance of such an order*.

S.Rep. 99-541 (October 17, 1986) at 33-34; 1986 U.S.C.C.A.N. 3555, 3587-88 (emphasis added).[5]

---

[5] For what it's worth, the court in *Gbemisola* blew past the "installation" question because the tracking device was installed in contraband mail sent via international mail across the border of the United States. Once the custom agents lawfully opened the package and accurately identified its contents as drugs, no privacy interest remained in the contraband. 225 F.3d at 242.

Next, the government's citation to *United States v. In Re Application for an Order Authorizing Installation, Monitoring, etc,. of Electronic Transmitting Devices*, 155 F.R.D. 401 (D. Mas. 1994) is puzzling. The very reason this opinion was written is clear from the case caption: the government pro-actively was seeking court authorization to install a transmitting device. The court determined that it had the power to review and grant such applications, even in the absence of positive statutory authority. Although the court implied that mere installation of tracking devices did not implicate the Fourth Amendment, nonetheless in its hands-on experience, both federal and state agents routinely sought authorizations from federal judicial officers before installing tracking devices on motor vehicles. 155 F.R.D. at 402. The court's actual holding was that Congress intended §3117 to broaden court authority to issue such orders pursuant to authority that courts already possessed under Rule 41. *Id*. at 402-03.

In support of his motion, Garcia has reached out to Supreme Court cases addressing property rights, *Soldal v. Cook County, Ill,*, 506 U.S. 56 (1992) and privacy rights in the home, *Kyllo v. United States*, 533 U.S. 27 (2001). Neither case adds to the analysis because it is clear from *Knotts* and *Karo* that the Supreme Court recognizes that the question Garcia is asking needs to be answered: under what circumstances, if any, does the Fourth Amendment forbid the government from installing a tracking device on a person's private property?

From the case law cited above, it is reasonably clear that the government must at least have a reasonable suspicion that the suspect is engaged in criminal activity and that monitoring his motor vehicle will produce evidence useful to the investigation. There is no persuasive authority for the proposition that the government may, on nothing more than its say-so, surreptitiously apply monitoring devices to the outside of private motor vehicles.

It is even clearer, from *Karo*, that the government must obtain a court warrant supported by probable cause before *monitoring* a transmitting device that is taken into a private residence. As a practical matter–as noted repeatedly in *dicta* in the cases–it is in the government's best interests always to proceed in this fashion so as not to run the risk that evidence is surrendered because it did not obtain a court order. Indeed, in the instant case, the government got lucky: had Garcia pulled his car into a garage in which the contraband was located, it is likely that suppression would have resulted.

So, it seems that the two operative questions in this case become: (1) Must the government go a step further and establish probable cause to install a locational transmitter in a case like Garcia's? (2) Regardless which level of proof must be established, may the government obtain the court's post-hoc imprimatur in a case like Garcia's?

There is no clear answer to either question, but I recommend that in a case like this one, reasonable suspicion is enough, and a post-hoc hearing sufficiently protects Garcia's rights. I would analogize this situation to the three-part spectrum that governs police-citizen encounters: no support is needed for a consensual encounter, reasonable suspicion must

support an investigative detention, and probable cause must support an arrest. Here, Garcia does have a Fourth Amendment right to protect the exterior of his car from government intrusion, but as the courts noted in *Michaels* and *McIver,* the intrusion caused by the application of the device is minimal. The *real* intrusion, which understandably–and justifiably–upset the dissent in *Knotts* is the 24/7 governmental monitoring that follows. However Orwellian and outrageous this may seem, it was settled in favor of the government in *Knotts*. The act of applying the device pales in comparison. Again, as a practical matter, Garcia's situation may be *sui generis* or close to it: it's hard to imagine many cases in which well-trained agents risk their entire investigation by failing to obtain a warrant as required by *Karo*.

Although it doesn't follow ineluctably, it would seem that if the court is willing to accept a showing of reasonable suspicion, it should be willing to allow the government to make this showing after the fact, just as it does in cases challenging police-citizen encounters. It would be better if everything were done in advance, and with a transmitter, there usually is no good reason not to, but the question at this point is not what the court believes is good practice, but whether what the agents did violated the Fourth Amendment. At least in a case where the defendant's only challenge is to the application of a transmitter to the exterior of his car, it would seem that he will receive adequate protection of his Fourth Amendment rights from a post-indictment suppression hearing.

That said, this was sloppy police work. It should not have occurred this way. Even so, the exclusionary rule is not about punishing police for being sloppy, it is about deterring them from violating a defendant's constitutional rights. If the government can establish that no constitutional violation occurred, then this court should deny Garcia's motion to suppress. At this juncture, however, the government has not established this, and suppression appears to be appropriate.

RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B) and for the reasons stated above, the court should grant the defendant's motion to suppress unless it determines that the government should be given the opportunity after the fact to establish that it had reasonable suspicions justifying installing a locational transmitter on the defendant's car.

Entered this 3rd day of February, 2006.

BY THE COURT:
/s/
STEPHEN L. CROCKER
Magistrate Judge

February 3, 2006

David Reinhard
Assistant United States Attorney
P.O. Box 1585
Madison, WI 53701-1585

Patrick J. Stangl
Stangl Law Offices, S.C.
6441 Enterprise Lane, Ste. 109
Madison, WI 53719

Re: United States v. Bernardo Garcia
Case No. 05-CR-155-C

Dear Counsel:

The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

In accordance with the provisions set forth in the memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before February 13, 2006, by filing a memorandum with the court with a copy to opposing counsel.

If no memorandum is received by February 13, 2006, the court will proceed to consider the magistrate judge's Report and Recommendation.

Sincerely,

/s/ Connie A. Korth

Connie A. Korth
Secretary to Magistrate Judge Crocker

Enclosures
cc: Honorable Barbara B. Crabb, District Judge